IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SEVEN NETWORKS, LLC, | § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 3:17-cv-1495-M |
| ZTE (USA), INC. and ZTE CORPORATION, | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant ZTE Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 30). For the reasons stated below, the Motion is **DENIED**.

### I. Factual and Procedural Background

On June 6, 2017, Plaintiff filed a complaint alleging infringement of seven patents.[1] (Compl., ECF No. 30). Plaintiff alleges that certain ZTE devices utilize patented software technologies for conserving battery usage and extending battery life. (*Id*. ¶¶ 11-18).

Defendant ZTE Corp. is a Chinese corporation with its principal place of business in Shenzhen, China. (Compl. ¶ 3). Defendant ZTE (USA), Inc. is a wholly owned subsidiary of ZTE Corp. incorporated in New Jersey with its principal place of business in Richardson, TX. (*Id*. ¶ 2).

ZTE Corp. is the fourth largest supplier of mobile devices in the United States, and ZTE (USA), Inc. is its exclusive distributor in the United States. (Resp. at 6, ECF. No. 40). ZTE devices are designed and manufactured by ZTE Corp. in Shenzhen, China. (*Id*. at 6). Title is

---

[1] U.S. Patent Nos. 8,811,952; 9,247,019; 9,325,600; 9,351,254; 9,516,127; 9,516,129; and 9,553,816.

transferred to ZTE (USA), Inc. in Hong Kong. (*Id.* at 10). Devices are then imported for sale in the United States, including in the Northern District of Texas. (*Id.*)

On October 3, 2017, ZTE Corp. filed a Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 30). On November 2, 2017, Plaintiff responded that personal jurisdiction over ZTE Corp. is proper under the stream of commerce theory. (ECF No. 40). On November 16, 2017, Defendant replied, challenging Plaintiff's formulation of the stream of commerce theory and reasserting that jurisdiction over it in this Court violates due process. (ECF No. 44). On January 16, 2018, the Court granted Plaintiff leave to file a surreply. (ECF No. 47).

## II. Legal Standard

Federal Circuit law governs the law of personal jurisdiction in patent-related cases. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). When a defendant challenges personal jurisdiction, the plaintiff bears the burden of proof on the issue. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). When a district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff need only establish a prima facie case for personal jurisdiction. *Id.* Under this standard, the court must accept the uncontroverted allegations in the plaintiff's complaint as true, and all factual disputes must be resolved in favor of the plaintiff. *Id.*

Determining whether personal jurisdiction over an out-of-state defendant is proper is a two-part inquiry. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). First, a court must analyze and apply the long-arm statute of the state in which it sits. *Id.* Second, the court must determine whether exercising jurisdiction over the defendant in the forum comports with the Due Process Clause of the United States Constitution. *Id.* Because the Texas long-arm statute and the federal Constitution are co-extensive, the analysis in this case is reduced to a

single inquiry: whether exercising jurisdiction over the nonresident defendant is consistent with the Due Process Clause. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).

The due process issue requires a two-step inquiry. First, a defendant must have sufficient "minimum contacts" with the forum. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Second, the requirement that a defendant litigate in the forum must not offend "traditional notions of fair play and substantial justice." *Id.* The plaintiff bears the burden of establishing minimum contacts, and upon that showing, the burden shifts to the defendant to prove that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Id.*

### a. Minimum Contacts

In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), the Supreme Court first recognized the stream of commerce theory of specific jurisdiction as a proper basis for establishing minimum contacts. The Court held that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297-298.

The exact requirements of the stream of commerce theory are unclear. In *Asahi Metal Industry Co. v. Superior Court*, the plurality opinion, authored by Justice O'Connor, declared that personal jurisdiction under the stream of commerce theory requires that the defendant purposefully avail itself of the privilege of conducting activities within the forum. 480 U.S. 102, 112 (1987). Justice O'Connor stated that, "[t]he 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*." *Id*. (emphasis in original). In contrast, Justice Brennan and three other Justices who concurred in the result concluded that a

defendant who places goods in the stream of commerce benefits thereby from the laws of the forum State, and a search for additional conduct by the defendant is thus unnecessary. *Id.* at 117. (Brennan, White, Marshall, & Blackmun, JJ., concurring in part and in the judgment).

The Supreme Court took up this issue again in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011). In *McIntyre*, the Court overturned a New Jersey Supreme Court decision holding that a single sale in the forum state was sufficient to satisfy the minimum contacts requirement under the stream of commerce theory. *Id.* The plurality opinion, authored by Justice Kennedy, emphasized that personal jurisdiction must be rooted in a submission to sovereign authority. *Id.* at 880. In doing so, the plurality opinion explicitly rejected the fairness and foreseeability-based approach put forward by Justice Brennan's concurrence in *Asahi*, and declared that the formulation of the stream of commerce theory put forward by Justice O'Connor is the appropriate standard. *Id.* at 882-885. Justices Breyer and Alito concurred in the judgment, but declined to join the holding in order to avoid announcing a rule of broad applicability. *Id.* at 887.

The Federal Circuit adopted and applied the stream of commerce theory to patent cases in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed.Cir.1994). In *Beverly Hills Fan*, the Federal Circuit reversed a district court's dismissal on personal jurisdiction grounds of a foreign manufacturer and an out-of-state distributor. *Id.* Although the foreign manufacturer had no license to do business, and had no assets, employees, agents for service of process, or direct sales in the forum, the court found the exercise of jurisdiction proper because the manufacturer purposefully shipped products through an established distribution channel with the expectation that those products would be sold in the forum. *Id.* The court held that jurisdiction was proper under either the *Asahi* plurality or partial concurrence's formulation of the stream of commerce theory and expressly declined to adopt either formulation. *Id.* at 1566. The Federal Circuit has

4

since consistently applied that approach. *See Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, at 1349 (Fed. Cir. 2016); *see also AFTG–TG*, 689 F.3d at 1364 (Fed. Cir. 2012); *Celgard*, 792 F.3d at 1382 (Fed. Cir. 2015).

### b. Fair Play and Substantial Justice

Determining whether personal jurisdiction offends traditional notions of fair play and substantial justice involves balancing: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and (5) the interest of the states in furthering their social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). Successful claims that jurisdiction offends traditional notions of fair play and substantial justice "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568.

## III. Analysis

### a. Minimum Contacts

ZTE Corp. argues that it lacks sufficient minimum contacts with this forum because it does not manufacture, market, sell, or import any of the products at issue in this case in the Northern District of Texas or anywhere in the United States. (Mot. to Dismiss, ECF No. 30). More narrowly, ZTE Corp. claims that it should be dismissed from this litigation because Plaintiff has not produced sufficient evidence that ZTE Corp.'s conduct related to this case was purposefully directed at the Northern District of Texas. (Reply, ECF No. 44).

One source of this dispute is that Plaintiff's Complaint often conflates ZTE Corp. with ZTE (USA), Inc. and does not expressly allege the stream of commerce theory of personal

jurisdiction. (Compl. ¶¶ 5-6). However, in its response, Plaintiff alleges extensive facts in support of its claim that ZTE Corp.'s actions are sufficient to establish minimum contacts under the stream of commerce theory. Plaintiff provides evidence that ZTE (USA), Inc. was created by ZTE Corp. for the purpose of marketing, distributing, selling, installing, and supporting telecommunications equipment in the United States, and that ZTE Corp. should reasonably be aware that the accused products are in fact being sold by retailers in Texas. (Resp. at 10-16).

In *Beverly Hills Fan*, the Federal Circuit held that a Chinese corporation that manufactured the accused products in Taiwan was subject to suit for patent infringement in Virginia. *Beverly Hills Fan*, 21 F.3d at 1560. The foreign corporation did not have assets or employees in Virginia, an agent for service in Virginia, or a license to do business in Virginia. *Id.* Further, it had not shipped the accused products into Virginia. *Id.* The Federal Circuit nevertheless held the corporation subject to personal jurisdiction because it "placed the accused fan in the stream of commerce, it knew the likely destination of the products, and its conduct and connections with the forum state were such that it should reasonably have anticipated being brought into court there." *Id.* at 1566.

In this case, ZTE Corp. similarly lacks these direct connections with this forum. However, ZTE Corp. transfers title of the accused products to an American corporation that ZTE Corp. created for the purpose of distributing and selling its products in the United States. ZTE Corp. thereby places the accused devices in the stream of commerce through an established distribution network that it helped create. The volume of sales of ZTE products in the United States is also significant. As the fourth largest provider of mobile devices sold in the United States, ZTE Corp. must be reasonably aware that products delivered to ZTE (USA), Inc. are in fact being sold in the United States. Given that ZTE (USA), Inc. is a wholly owned subsidiary of ZTE Corp., that ZTE (USA), Inc. has its principal place of business in the Northern District of

Texas, and that ZTE products are sold in the Northern District of Texas, ZTE Corp.'s distribution of the accused products in to the stream of commerce through ZTE (USA), Inc. is sufficient to be considered conduct purposefully directed at this forum. Therefore, the Court finds the facts alleged sufficient to establish a prima facie case for the exercise of personal jurisdiction over ZTE Corp. under either formulation of the stream of commerce theory.

### b. Fair Play and Substantial Justice

ZTE Corp. also claims that its being subject to suit in this Court would violate traditional notions of fair play and substantial justice. However, ZTE Corp. does not prove that this is one of the rare cases where Plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting ZTE Corp. to litigation within the forum.

ZTE Corp. rightly claims that the burden of defending suit in the United States is significant for a foreign corporation. However, ZTE Corp. fails entirely to recognize the substantial interests of Texas and the United States in enforcing federal patent laws. ZTE Corp. also fails to recognize Plaintiff's interest in avoiding having to relitigate the alleged infringement of U.S. patents in a foreign tribunal based on the same underlying facts. Defendant does not provide a sufficient reason why these factors, combined with the fact that progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal much less burdensome, should be outweighed by the burden of requiring a multinational corporation to defend suit in the United States.

## IV. Conclusion

For the foregoing reasons, ZTE Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**.

**SO ORDERED**.

May 30, 2018.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**